IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DIETGOAL INNOVATIONS LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> MEREDITH CORPORATION, <br><br> *Defendant*. | Civil Action No. 2:12-cv-00332-MHS-CMC <br><br> JURY TRIAL DEMANDED |

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MEREDITH CORPORATION'S MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**

_____

**BUETHER JOE & CARPENTER, LLC**

Christopher M. Joe (Lead Counsel)
Eric W. Buether
Brian A. Carpenter
Niky Bukovcan
Mark D. Perantie
Monica Tavakoli

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:     (214) 466-1272
Facsimile:      (214) 635-1828

**ATTORNEYS FOR PLAINTIFF
DIETGOAL INNOVATIONS LLC**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. ARGUMENT ................................................................................................................... 4

 A. Venue in the Eastern District of Texas is Proper ..................................................... 4

 B. Meredith's Motion to Transfer Should be Denied ................................................... 4

 1. Legal Standard ............................................................................................. 4

 2. Private Interest Factors ................................................................................ 6

 3. Public Interest Factors................................................................................ 13

IV. CONCLUSION.............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*BNSF Ry. Co. v. OOCL (USA), Inc.*,
    667 F. Supp. 2d 703 (N.D. Tex. 2009) .................................................................................. 9

*Cont'l Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960) .......................................................................................................... 9, 10

*Digital Reg of Texas, LLC v. Adobe Systems, Inc., et al.*,
    C.A. No. 6:11-cv-305-LED (E.D. Tex. Mar. 28, 2012) ....................................................... 12

*Droplets v. E\*Trade*,
    2012 WL 3133398, 2012 U.S. Dist. LEXIS 111694 (E.D. Tex. Mar. 5, 2012) ........... 8, 12

*Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*,
    No. 6:11-cv-34, (E.D. Tex. Apr. 19, 2012) ......................................................................... 7

*Eolas Techs., Inc v. Adobe Sys. Inc.*,
    2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ............................................ 14

*Gulf Oil v. Gilbert*,
    330 U.S. 501 (1947) ............................................................................................................. 5

*Hanby v. Shell Oil Co.*,
    144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................................................. 5

*Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*,
    Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012) .............................. 11

*In re Affymetrix, Inc.*,
    2010 WL 1525010 (Fed. Cir. Apr. 13, 2010) ...................................................................... 5

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................... 6

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ..................................................................................... 7, 13

*In re Nat'l Presto Indus., Inc.*,
    347 F.3d 662 (7th Cir. 2003) ............................................................................................... 5

*In re Nintendo Co. Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009) .......................................................................................... 6

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) .......................................................................................... 8

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) .......................................................................................... 9

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ......................................................................................... 5, 8

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................... 5, 6, 7, 11

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) .................................................................................. 10, 12

 *In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ........................................................................................ 12

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
    2012 WL 462956 (E.D. Tex. Feb. 13, 2012) ..................................................................... 5

*Mohamed v. Mazda Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000) ................................................................................ 5

*NovelPoint Learning v. Leapfrog Enter.*,
    2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ................................................................. 7, 9

*Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*,
    Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012) ............................................. 11

*Portal Technologies LLC v Yahoo! Inc.*,
    Civil Action No. 2:11-cv-00440-JRG (E.D. Tex. Aug. 7, 2012) ..................................... 12

*Stragent LLC v. Audi AG*,
    2011 WL 2912907 (E.D. Tex. July 18, 2011) ................................................................... 8

*Texas Data Co., LLC v. Target Brands, Inc.*,
    771 F. Supp. 2d 630 (E.D. Tex. 2011) .............................................................................. 7

*Tivo, Inc. v. Cisco Systems, Inc.*,
    Civil Action No. 2:12-cv-00311-JRG (E.D. Tex. Aug. 13, 2012) ............................. 11, 12

iii

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005) ................................................................................... 4, 13

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................................ 4, 9, 11

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ........................................................................................ 4

*West Coast Trends, Inc. v. Ogio Int'l, Inc.*,
    2011 WL 5117850 (E.D. Tex. Oct. 27, 2011) ............................................................. 7, 9

**<u>Statutes</u>**

28 U.S.C. § 1391 ................................................................................................................. 4, 13

28 U.S.C. § 1400 ........................................................................................................................ 4

28 U.S.C. § 1404 ................................................................................................. 4, 5, 8, 9, 10, 11

Fed. R. Civ. P. 12 ....................................................................................................................... 4

Plaintiff DietGoal Innovations LLC ("DietGoal") files this Response to Defendant Meredith Corporation's ("Meredith") Motion to Transfer Venue to the Southern District of New York [Dkt. No. 19] and alleges as follows:

## I.  INTRODUCTION

Transferring DietGoal's claims against Meredith to New York would create the existence of multiple lawsuits in different forums involving the same issues resulting wasteful duplicative litigation causing a waste of the parties' time and money and judicial resources contrary to the interests of justice and judicial economy. Additionally, Meredith admits that it has more witnesses with relevant knowledge located in Seattle, Washington and Vermont than in its proposed transferee venue and also admits that relevant documents are located in these two locations.  Thus, apart from the fact that judicial economy weighs heavily against transfer of venue, Meredith has not satisfied its heavy burden of showing that the transferee venue is clearly more convenient than DietGoal's chosen forum.

## II.  BACKGROUND

**Background of the DietGoal Litigation**.  DietGoal's patent infringement claims against Meredith concern a single patent—U.S. Patent No. 6,585,516 ("the '516 Patent").  The '516 Patent is entitled "Method and System for Computerized Visual Behavior Analysis, Training, and Planning," and relates generally to web-based computerized meal or recipe planning interfaces available on websites.  Exhibit A.

Dr. Alabaster is the inventor of the '516 Patent, the Founder, President, and CEO of DietFit, Inc. ("DietFit"), and also a clinical professor of medicine at George Washington University.  *See* www.dietfit.com.  In 1999, he founded DietFit after spending more than 20 years conducting scientific research at the National Cancer Institute in Maryland and at George

Washington University. *Id.* DietFit practices, in part, the invention of the '516 Patent, and Dr. Alabaster has assigned the patent to DietGoal. DietGoal has filed the present action in order to protect Dr. Alabaster's invention from the infringing activities of others, such as those conducted by the Defendant.

DietGoal filed its complaint against Meredith on June 13, 2012. Dkt. 1. DietGoal's patent infringement claims against Meredith are among the twenty-five lawsuits pending before this Court (the "DietGoal litigation"). *See* Parties' Joint Discovery and Case Management Plan, Dkt. No. 527 (August 17, 2012) in Civil Action No. 2:11-cv-00418, *DietGoal Innovations, LLC v. Arby's Restaurants Group, Inc.* ("*Arby's* Action"). There are no other actions involving the patent-in-suit in any other jurisdiction.

This Court held a Scheduling Conference in the *Arby's* Action on August 29, 2012, and additionally heard oral arguments regarding nine of the Defendants' various motions. *See* Dkt. Nos. 300, 464, and 524 in the *Arby's* Action. Magistrate Judge Craven has since issued three Reports and Recommendations regarding 1) Defendants' Motion to Dismiss Based on Unpatentable Subject Matter [*Arby's* Action at Dkt. 545]; 2) Defendants' Motions to Dismiss for Lack of Personal Jurisdiction [*Arby's* Action at Dkt. 547]; and 3) Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue [No. 2:12-cv-568 at Dkt. 282; No. 2:12-cv-562 at Dkt. 562]. In the *Arby's* Action, the Court has issued a Scheduling and Discovery Order [Dkt. 540]; an Electronic Discovery Order [Dkt. 541]; and a default Protective Order [Dkt. 542]. A second Scheduling Conference before the Court is set for October 16, 2012. *See, e.g.,* No. 2:12-cv-327 at Dkt. 19.

**Plaintiff DietGoal**. DietGoal is the assignee of the '516 Patent. DietGoal is a Texas Limited Liability Company based in Austin, Texas, and complies with all corporate formalities

according to Texas State Law.  *See* Complaint, Dkt. 1 at ¶ 1.  Its members reside in New York, Virginia, and Pennsylvania.

**Defendant Meredith.**  Defendant Meredith is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business located in Des Moines, Iowa.  Dkt. 14 at ¶ 2.  It admits that this Court has personal jurisdiction over it.  Dkt. 14 at ¶ 5.

According to its motion, "Meredith publishes magazines related to health, food, and women's issues, and also operates related websites."  Motion at 3.  The two websites DietGoal accuses of infringement, www.allrecipes.com ("the Allrecipes Website") and www.eatingwell.com ("the EatingWell Website"), are operated on a day-to-day basis out of Meredith's offices in Seattle, Washington and Shelburne, Vermont respectively.  *Id.* at 3-4.  Only the senior managers "with ultimate responsibility for these two accused websites" are located in New York City.  *Id.* at 3.  Documents related to the operation of these two websites are housed in New York, Vermont, and Washington. *Id.* at 3-4.

The EatingWell website was developed internally and by an independent computer programmer in Canada.  Dkt. 19, Dec. of Sommers, at ¶ 6.  Current and prior employees who have worked on the development and/or implementation of the menu planner reside in Vermont. *Id.*

As of August 24, 2011, employees over 3000 employees and has offices in Iowa, California, Illinois, Michigan, Texas, Virginia, New York, Georgia, Arizona, Oregon, Connecticut, Tennessee, Kansas, South Carolina, Nevada, and Massachusetts.  *See* Exhibit B, Meredith 2011 Annual Report at 3, 12-13.  In 2011, Meredith generated revenues of $1.4 billion. *Id*. at 1.

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MEREDITH CORPORATION'S MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**            **Page 3**

### III.     ARGUMENT

A.     **Venue in the Eastern District of Texas is Proper**

As a threshold matter, venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction.  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) (holding that 28 U.S.C. §§ 1400 and 1391(c) must be read together such that in patent litigation "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"); *see also Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("quickly dispatch[ing]" defendant's motion to dismiss for improper venue because "the venue point is a non-issue").  In patent litigation "the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee."  *Id.*  Meredith does not dispute that this Court has personal jurisdiction and neither has it filed a motion to dismiss under Rule 12(b)(3) for improper venue.  It only asserts that the Southern District of New York is a more convenient forum pursuant to 28 U.S.C. § 1404(a).  The only issue, thus, is whether the private and public interest factors under § 1404(a) analysis weigh in favor of a transfer, which they do not.

B.     **Meredith's Motion to Transfer Should be Denied**

   1.     **Legal Standard**

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MEREDITH CORPORATION'S MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK            Page 4**

Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants. *Volkswagen II,* 545 F.3d at 315; *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947); *see also In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. Apr. 13, 2010) (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003)) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."). Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*").  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law.  *Id.*

### 2. Private Interest Factors

#### a. The Relative Ease of Access to Sources of Proof

The court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues.  *See Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009).  Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *Volkswagen II*, 545 F.3d at 316.  Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue.  *See id.* at 316.  This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.  *See, e.g.*, *Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Although Meredith has shown that it maintains offices in the proposed transferee forum—the Southern District of New York—it has not submitted any evidence that any appreciable number of documents are actually located at those offices only.  Instead, it admits that relevant documents related to this action are located as far away from its proposed transferee forum as Washington State as well as Vermont.  Motion at 3-4.  Relevant documents may also be located in Canada or in any of the number of other Meredith offices, such as those located in

Iowa, California, Illinois, Michigan, Texas, Virginia, Georgia, Arizona, Oregon, Connecticut, Tennessee, Kansas, South Carolina, Nevada, and Massachusetts. Meredith cannot assert that New York is the only location where relevant documents are located. Thus, looking at Meredith's evidence in the most favorable light, this factor is neutral.

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Importantly, the defendant bears the burden of identifying unwilling third party witnesses that would benefit from the transfer. *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, slip op. at 5 (E.D. Tex. Apr. 19, 2012); *see also Texas Data Co., LLC v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011); *NovelPoint Learning v. Leapfrog Enter.*, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (noting that the Court will not base its conclusion on unidentified witnesses); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

Meredith admits and has identified third party witnesses that reside all over the country and some that reside outside of the country. For example, it has identified prior employees that reside in Vermont and an independent programmer who resides in Canada. Motion at 5; Dec. of Sommers, at ¶ 6. The prosecuting attorney, Steven B. Kelber, is located in Bethesda, MD, and the inventor of the patent-in-suite, Dr. Oliver Alabaster, is located in Alexandria, Virginia.

Meredith also identifies prior art witnesses located in Vermont, Virginia, Japan, California, and Arizona. Motion at 5.

Meredith's reliance on this Court's decision in *Droplets v. E\*Trade* (*Droplets I*), 2012 WL 3133398, 2012 U.S. Dist. LEXIS 111694, at \*6 (E.D. Tex. Mar. 5, 2012), is misplaced. In granting transfer in that case, this Court emphasized "that ten of the eleven [witnesses] are subject to the absolute subpoena powers of the Southern District of New York. Further, the three additional non-party witnesses identified by Defendants bring the total to thirteen non-party witnesses who are subject to compulsory process in the Southern District of New York." *Id*. at \*10. As discussed above, Meredith has failed to establish through competent evidence that any non-party witnesses are subject to the absolute subpoena power of the Southern District of New York, much less thirteen non-party witnesses.

Thus, because the Southern District of New York is incapable of having absolute subpoena power over these witnesses and because Meredith cannot show that it would be convenient for all third parties to travel to New York, this factor is neutral at best.

    c.   **The Cost of Attendance for Willing Witnesses**

All parties and witnesses must be considered in the analysis of this factor. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). Additionally, the convenience of non-party witnesses is given greater weight than that of party

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO**
**DEFENDANT MEREDITH CORPORATION'S MOTION TO**
**TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**   **Page 8**

witnesses. *Stragent LLC v. Audi AG*, 2011 WL 2912907, at *7 (E.D. Tex. July 18, 2011); *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

As discussed above, Meredith cannot show that all of its own witnesses are located in New York. By its own admission, a greater number of its employees with alleged relevant knowledge reside in Washington and Vermont. Motion at 3-4, 8-9. Furthermore, the cost of attendance at trial in New York would be significantly greater than trial in this forum because of the increased food and lodging costs and the longer expected trial length in New York City. The per diem rates for fiscal year 2012 published by the General Services Administration show that the New York City per diem rate for lodging averages over two-hundred and eighteen percent higher than in Marshall, Texas. *See* Exhibit C. Also, Meredith generated over $1.4 billion in revenue in 2011. Exhibit B at 1. Thus, the relative burden to Meredith to attend trial in this forum is not as great as the burden to DietGoal and its witnesses to travel to New York to attend trial. Therefore, this factor weighs against transfer.

### d. Other Practical Problems

The goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen,* 376 U.S. at 616. As a result, in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of "judicial economy." Furthermore, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010) (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)) (additional citation omitted); *see also* 28 U.S.C. §1404(a) ("For the convenience of the parties

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MEREDITH CORPORATION'S MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK          Page 9**

and witnesses, in the interest of justice"). Thus, although judicial economy is not among the list of enumerated *Gilbert* factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice . . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26. Although patent infringement cases "may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen of Am.*, 566 F.3d at 1351.

Transfer of DietGoal's claims against Meredith to New York would not promote judicial economy in this case. Transferring DietGoal's claims against Meredith and the other defendants who have filed transfer of venue motions would splinter this litigation into at least several separate actions pending in potentially eight different forums, including districts in New York, Georgia, Michigan, Massachusetts, Pennsylvania, California, Colorado, New York, and Oklahoma. This type of fragmentation would also leave dozens of defendants in the litigation pending in this forum. Each of these separate actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trial. Even if the present action is not formally consolidated with the other co-pending matters, this jurisdiction maintains an efficient management of all of the co-pending matters. Transferring DietGoal's claims against Meredith would create duplicative, parallel proceedings on the same patent, unnecessarily wasting judicial resources and raising the specter of inconsistent adjudication. At this point, the Court is well familiar with this case as it has recently heard oral arguments

regarding nine motions and has issued three rulings to date regarding the same. The Court will also hold a second Scheduling Conference shortly to address additional co-pending suits.

In short, transfer would squarely contradict the goals of §1404(a). *See Van Dusen,* 376 U.S. at 616 (opining that the goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense"). Thus, especially in view of the weak showing of private factors favoring transfer, this is a situation where judicial economy is a "paramount consideration in determining whether transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351. Meredith belittles this factor. This Court has denied motions to transfer on this ground in several cases with even less compelling circumstances than the DietGoal litigation. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-cv-234 LED-JDL (E.D. Tex. May 30, 2012); *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012).

For example, this Court has recently denied motions to transfer under similar circumstances for these very same reasons. In *Tivo, Inc. v. Cisco Systems, Inc.*, Civil Action No. 2:12-cv-00311-JRG, Dkt. No. 27, at 2-3 (E.D. Tex. Aug. 13, 2012), this Court denied a motion to transfer, declaring as follows:

> This Court agrees with Judge Seeborg that, for purposes of efficiency judicial economy, the entire dispute between Cisco and Tivo is best tried in the same court, along with the other closely related cases involving these same parties and patents. Tivo, Verizon, Motorola, Time Warner Cable, and Cisco are all parties to the above proceedings in this District involving the same patents in dispute. Accordingly, the EDTX is in a unique position to completely adjudicate the overlapping disputes among all parties involved. Further, this Court can avoid duplicative actions, depositions, and discovery, and will be able to coordinate common schedules appropriately to address streamlined disputes shared in all of these related cases.

**DIETGOAL INNOVATIONS LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MEREDITH CORPORATION'S MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**          **Page 11**

The Court in *Tivo* also pointed out that denial of a motion to transfer on judicial economy grounds is justified "where there are some differences in the retained cases," and emphasized that "the Federal Circuit has held that mandamus is inappropriate when two cases may not involve precisely the same issues, but there will be significant overlap and a familiarity with the patents that could preserve time and resources." *Id*. at 3 (citing *Volkswagen of Am.,* 566 F.3d at 1351).

Similarly, in *Portal Technologies LLC v Yahoo! Inc.*, Civil Action No. 2:11-cv-00440-JRG, Dkt. No. 44 at 8 (E.D. Tex. Aug. 7, 2012), the Court denied a motion to transfer on judicial economy grounds for the following reasons:

> In this case, all three *Portal* cases currently pending in this Court involve common questions of claim construction and validity. While the Court has not formally consolidated these cases for pretrial purposes, the *Markman* hearing dates for at least two cases (the present case and 2:11-cv-438) are scheduled for the same time and the Court intends, at a minimum, to consolidate the *Markman* hearing and related briefing between these two cases. Because there are several other *Portal* cases pending in this Court, traditional notions of judicial economy weigh against transfer.

Finally, even though this case is still in the early stages of litigation, practical problems include those that are "rationally based on judicial economy." *Digital Reg of Texas, LLC v. Adobe Systems, Inc., et al.*, C.A. No. 6:11-cv-305-LED (E.D. Tex. Mar. 28, 2012). Meredith's reliance on *Droplets I* is misplaced. As the Court noted in *Droplets I*, there the co-pending cases in this district involved different allegations and different categories of defendants and was considered by this Court to be "sufficiently distinct from the two co-pending cases so as to be analogous to *In re Zimmer*." *Id.* at *23 (comparing case to *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)). Here, the co-pending actions are all similar in nature, are asserted against the same category of defendants, and involve the same patent. There are no

distinguishing facts between the present action and any of the other twenty-four co-pending actions. Thus, this factor weighs heavily against transfer.

### 3. Public Interest Factors

#### a. Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "ab[ility] to resolve [a] dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche*, 587 F.3d at 1336. Meredith asserts that this factor is neutral; however, this factor weighs against transfer. Motion at 7. When the most recently available statistics between the Eastern District of Texas and the Southern District of New York are compared, this becomes apparent. For example, the median time from filing to trial in the District of New York is seven months longer than in the Eastern District of Texas. *See* Exhibit C.

#### b. Local Interest

In patent litigation, the injury occurs at the place where "the infringing activity directly impacts on the interests of the patentee." *Trintec*, 395 F.3d at 1280. As Meredith has conducted infringing activities in the Eastern District of Texas through its website, the residents of this District have an interest in determining the outcome of this litigation. *See id.* Meredith claims that New York has a greater interest because it is located there. Motion at 13. By this logic, only citizens of a corporation's offices should ever determine whether that corporation's tortious acts conducted elsewhere create liability. This argument ignores all venue rules. *See, e.g.*, 28 U.S.C. 1391(a), (b), (e), (f), and (g) (venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Additionally, Meredith's

argument is disingenuous as it also admits that it has offices in Seattle, Washington and Vermont whose citizens would be equally interested in the outcome of this proceeding.

Meredith also makes much ado about the length of time DietGoal has been in business prior to the filing of this case. However, there is no "time-based litmus test" for how long a plaintiff must reside in a particular district before it brings suit there. *See Eolas Techs., Inc v. Adobe Sys. Inc.*, Case No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125 at *22 (E.D. Tex. Sept. 28, 2010). As the injury in this patent case has occurred here, the citizens here as well as DietGoal have an interest in the outcome of this case. Thus, at best, this factor is neutral.

        c.      **Familiarity with Governing Case Law**

Without justification, Meredith asserts that this factor is neutral. Motion at 7. However, evidence shows that this Court is much better suited to manage a large complex patent litigation matter than that of the Southern District of New York. An obvious indicator as to a proposed forum's ability to deal with patent cases is the existence of local patent rules. Unlike this District, the Southern District of New York has no local rules dealing specifically with patent matters. This Forum has well-developed rules that define specialized procedures and timelines specific to patent suits as compared to general civil matters that do not deal with the same complex set of issues, such as a *Markman* hearing and all of its associated procedures. These specialized rules allow for efficient and predictable management of patent cases that benefit all parties and reflect this District's familiarity with the laws that will govern this case. Thus, at best, this factor is neutral.

        d.      **Conflicts of Law in the Application of Foreign Law**

The avoidance of foreign conflict of law problems is not applicable to this case as only the Federal Rules apply, and Meredith has not identified it as an issue.

## IV.     CONCLUSION

On balance, an analysis of the factors weighs heavily against transfer.  Thus, the Court should *deny* Meredith's Motion to Transfer Venue.


Dated: October 1, 2012                              Respectfully submitted,

                                                    **BUETHER JOE & CARPENTER, LLC**

                                                    By:    */s/ Niky Bukovcan*
                                                           Christopher M. Joe (Lead Counsel)
                                                           State Bar No. 00787770
                                                           Chris.Joe@BJCIPLaw.com
                                                           Eric W. Buether
                                                           State Bar No. 03316880
                                                           Eric.Buether@BJCIPLaw.com
                                                           Brian A. Carpenter
                                                           State Bar No. 03840600
                                                           Brian.Carpenter@BJCIPLaw.com
                                                           Niky Bukovcan
                                                           State Bar No. 24078287
                                                           Niky.Bukovcan@BJCIPLaw.com

                                                           1700 Pacific Avenue, Suite 4750
                                                           Dallas, Texas 75201
                                                           Telephone:    (214) 466-1272
                                                           Facsimile:     (214) 635-1828

                                                           **ATTORNEYS FOR PLAINTIFF
                                                           DIETGOAL INNOVATIONS LLC**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 1st day of October, 2012.  Any other counsel of record will be served by facsimile transmission and first class mail.


                                                    */s/ Niky Bukovcan*
                                                    Niky Bukovcan