**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DIETGOAL INNOVATIONS LLC**<br><br>**v.**<br><br>**BRAVO MEDIA LLC** | **Civil Action No. 2:2012-cv-327-MHS-CMC** |
| **DIETGOAL INNOVATIONS LLC**<br><br>**v.**<br><br>**SCRIPPS NETWORKS, LLC d/b/a FOOD.COM** | **Civil Action No. 2:2012-cv-330-MHS-CMC** |
| **DIETGOAL INNOVATIONS LLC**<br><br>**v.**<br><br>**MEREDITH CORPORATION** | **Civil Action No. 2:2012-cv-332-MHS-CMC** |
| **DIETGOAL INNOVATIONS LLC**<br><br>**v.**<br><br>**TACO MAYO FRANCHISE SYSTEMS, INC.** | **Civil Action No. 2:2012-cv-336-MHS-CMC** |
| **DIETGOAL INNOVATIONS LLC**<br><br>**v.**<br><br>**TIME INC.** | **Civil Action No. 2:2012-cv-337-MHS-CMC** |
| **DIETGOAL INNOVATIONS LLC**<br><br>v.<br><br>**DOMINO'S PIZZA, INC.** | **Civil Action No. 2:12-cv-561-MHS-CMC** |

| | |
|---|---|
| **DIETGOAL INNOVATIONS LLC** | |
| **v.** | **Civil Action No. 2:2012-cv-563-MHS-CMC** |
| **HEARST COMMUNICATIONS, INC. d/b/a SEVENTEEN MAGAZINE** | |
| **DIETGOAL INNOVATIONS LLC** | |
| **v.** | **Civil Action No.  2:2012-cv-564-MHS-CM** |
| **QIP HOLDER LLC d/b/a QUIZNOS** | |
| **DIETGOAL INNOVATIONS LLC** | |
| **v.** | **Civil Action No.  2:2012-cv-565-MHS-CM** |
| **IAC/INTERACTIVE CORP., DAILY BURN, INC., & TELEVISION FOOD NETWORK G.P. d/b/a FOOD NETWORK** | |
| **DIETGOAL INNOVATIONS LLC** | |
| **v.** | **Civil Action No.  2:2012-cv-566-MHS-CMC** |
| **DUNKIN' BRANDS GROUP, INC.** | |
| **DIETGOAL INNOVATIONS LLC** | |
| **v.** | **Civil Action No.  2:2012-cv-568-MHS-CMC** |
| **EL POLLO LOCO, INC.** | |

## DEFENDANTS' JOINT MOTION TO STAY
## PROCEEDINGS PENDING RULING ON MOTION TO TRANSFER

In light of the Federal Circuit's recent recommendation in its *In re Fusion-IO* decision that a transfer motion be addressed by a district court prior to any other proceedings in the case, Defendants Bravo Media, LLC ("Bravo"), Meredith Corporation ("Meredith"), Time Inc. ("Time"), Taco Mayo Franchise Systems, Inc. ("Taco Mayo"), Hearst Communications, Inc. ("Hearst"), Dunkin' Brands Group, Inc. ("Dunkin' Brands"), QIP Holder LLC ("Quiznos"), El Pollo Loco Inc. ("El Pollo Loco"), Domino's Pizza, Inc. ("Domino's Pizza"), IAC/Interactive Corp. ("IAC"), Daily Burn, Inc. ("Daily Burn"), Television Food Network G.P. d/b/a Food Network ("Food Network"), and Scripps Networks, LLC d/b/a Food.com ("Food.com") (collectively "Moving Defendants") respectfully ask the Court to stay all proceedings in their cases until the Court rules on their pending motions to transfer venue.

## I.   <u>INTRODUCTION</u>

The Moving Defendants filed motions months ago pursuant to 28 U.S.C. § 1404(a) to transfer their respective cases to clearly more convenient forums than this one given, among other things:  (a) DietGoal lacks a connection of any kind to this District; (b) no witnesses or sources of proof are located within 100 miles of this District; and (c) witnesses and sources of proof are located within the proposed transferee forums.  Because litigating for any amount of time in this district would cause inconvenience to the parties and witnesses in these cases, Moving Defendants sought a transfer very quickly, many filing their motions around the time of their Answers or as their response to Plaintiff's Complaint.  At the Rule 16 conference for the second set of DietGoal cases on October 16, the Court acknowledged the Moving Defendants' concerns with having a decision on the motion to transfer and stated that it would work to decide them as promptly as it could.

The transfer motions have now been pending for as much as a year in some cases and four months in others.  Moving Defendants appreciate that this Court has a heavy patent docket and competing docket priorities and works very hard to decide motions as quickly as it can.  However, while awaiting a decision, Moving Defendants are prejudiced in a number of important ways:

1.   The Moving Defendants have already started down the road of this Court's very specific claim construction procedures.  While those procedures may have some advantages, the proposed districts have different procedures, often much less detailed and expensive.  Absent a stay, the Moving Defendants will waste resources going through this District's different procedures, such as negotiating constructions for all terms proposed by any of the dozens of defendants, negotiating and preparing joint constructions and charts, and preparing for and conducting a full tutorial and Markman hearing.  Other districts often permit (and even prefer) a much simpler, less expensive claim construction procedure, such as a targeted summary judgment motion in which only one or two terms are construed.

2.   The Court's procedures for this large cluster of separate cases require the dozens of defendants to choose one defendant to serve as "Lead Defendant" in briefing and arguing positions for everyone and to enter into a cost-sharing arrangement to reimburse that Lead Defendant for its services.  Not only does this procedure force parties to cede representation to another defendant's attorneys, but the "cost-sharing" payments made as claim construction continues will have been a waste if the Moving Defendants are transferred during this process.

3.   The Court has also consolidated all defendants for purposes of discovery, diluting the amount of oral and written discovery that each defendant would almost certainly have if the

cases are transferred.  These additional limitations caused by this pre-transfer consolidation are already starting to impact the defendants as discovery accelerates on the merits.

4.      Finally, allowing the case to proceed on the merits so far without a decision on transfer undermines the very purpose of 28 U.S.C. § 1404, which is to avoid the prejudice of litigating in an inconvenient forum.

After receiving arguments about this type of prejudice pending a transfer decision, the Federal Circuit just a few weeks ago stated that it "fully expect[ed]" a party to file a motion to stay pending a transfer motion and "fully expect[ed]" the district court to take up that motion to stay and motion to transfer *before* proceeding on other matters in the case.  *In re Fusion-IO, Inc.*, Misc. No. 12-139, slip op. at 2 (Fed. Cir. Dec. 21, 2012).

To avoid further mounting prejudice in these cases while it reaches the motions to transfer, this Court should follow the Federal Circuit's recommendation and stay further proceedings on the merits for these cases until a decision on the transfer issue is rendered.  While such a short stay will relieve the significant prejudice to Moving Defendants, it will cause no prejudice to Plaintiff.

## II.    <u>BACKGROUND</u>

On September 15, 2011, DietGoal sued over two dozen defendants that operate an array of distinct accused websites, with the only common thread among them being that all were accused of infringing the same patent.[1]  On November 3, 2011, DietGoal amended its Complaint to add numerous additional defendants.[2]  Many of those defendants quickly sought severance and transfer.  For example, on January 13, 2012, Hearst, IAC, Daily Burn, Food Network, and Wegmans Food Markets, Inc. filed motions to sever them from other defendants and transfer

---

[1] *See* Case No. 2:11-cv-418-MHS-CMC (hereafter "*DietGoal I*"), Dkt. No. 1.
[2] *See id.*, Dkt. No. 78.

their severed cases to the Southern District of New York.[3]   On that same day, Quiznos and Domino's Pizza moved to sever and transfer the actions against them to the District of Colorado and Eastern District of Michigan, respectively.[4]   On February 10, 2012, El Pollo Loco filed its motion to sever from the other defendants and transfer its case to the Central District of California, and Dunkin' Brands likewise moved to transfer to the District of Massachusetts on August 7, 2012.[5]   Those motions which were argued at a scheduling conference on August 29, 2012, remain pending, some after nearly a year.

On June 13, 2012, Plaintiff brought separate actions against over a dozen additional defendants (hereafter the "June 13 defendants")[6]   On August 8, 2012, the same day their answers were due, Time and Taco Mayo moved to transfer their cases to the Southern District of New York and Western District of Oklahoma, respectively.[7]   On August 17, 2012, Food.com filed a similar motion to transfer to the Southern District of New York.[8]   Bravo and Meredith followed shortly thereafter with similar motions to transfer to the Southern District of New York on September 14 and 17, 2012.[9]

On September 6, 2012, in a common order across all the June 13 cases, the Court ordered the June 13 defendants to appear together at a scheduling conference in Texarkana on October 16, to negotiate together with Plaintiff on case management, and to submit a joint Rule 26 report prior to the scheduling conference.[10]   The June 13 Moving Defendants complied with that order and submitted a Joint Case Management Plan, in which they proposed a claim construction

---

[3] *See id.*, Dkt. Nos. 287, 292, 307.
[4] *See id.*, Dkt. Nos. 294, 283.
[5] *See id.*, Dkt. Nos. 373, 514.
[6] *See* Case Nos. 2:12-cv-327 to -340.
[7] *See* Case No. 2:12-cv-332, Dkt. No. 19; *see also* Case No. 2:12-cv-336, Dkt. No. 17.
[8] *See* Case No. 2:12-cv-330, Dkt. No. 14.
[9] *See* Case No. 2:12-cv-327, Dkt. No. 20.
[10] *See, e.g.*, Case No. 2:12-cv-327, Dkt. No.19.

process that followed ***after*** the claim construction process for the *DietGoal I* case that had been filed in 2011.[11]  Such a proposal was designed, in part, to provide the Court time to address the pending transfer motions ***before*** the Court and the parties proceeded on the merits.  The Court rejected the proposal and placed the June 13 defendants on an accelerated schedule with the earlier-filed *DietGoal I* case.[12]  The Court essentially consolidated all the *DietGoal* cases for discovery and claim construction purposes on the earlier *DietGoal I* case schedule, despite the fact that many defendants have transfer motions pending.  Furthermore, the Court ordered that for "efficiency purposes," all the defendants in all of the *DietGoal* cases would be required to appoint a "Lead Defendant" to represent the diverse interests of all of the several dozen separate defendants in both claim construction briefing and argument.[13]  Likewise, all other defendants were ordered to reach a "cost-sharing" arrangement to pay the Lead Defendant's counsel to represent them during the claim construction process in Texas.[14]

As part of the Rule 26 case planning process, Defendant Taco Mayo asked for a stay of discovery pending a decision on its motion to transfer.[15]  During the October 16 scheduling conference, the Court denied that request to postpone discovery, stating that it did not have "much leeway in excusing [a party] from doing any kind of written discovery until [a transfer motion] is ruled upon."[16]  However, the Court acknowledged the defendants' concerns with moving forward in this forum while motions to transfer cases to another forum were pending:

> But in exchange for [not staying discovery], I promise you I will get to the motion as quickly as possible. I believe that was a Motion to Transfer Venue, or in the

---

[11] Case No. 2:12-cv-327, Dkt. No. 24, at 16-17.  That proposal would have, for example, set the deadline to exchange proposed constructions of claim terms at May 17, 2013, instead of the rapidly approaching January 15, 2013 proposed by DietGoal and set by the Court.

[12] *See* Ex. 1 (Transcript of Scheduling Conference), at 5; Case No. 2:12-cv-327, Dkt. No. 29, at 2-3.

[13] Case No. 2:12-cv-327, Dkt. No. 29, at 7-8.

[14] *Id.*

[15] Case No. 2:12-cv-327, Dkt. No. 24, at 11.

[16] Ex. 1 (Transcript of Scheduling Conference), at 7.

Alternative, Motion to Dismiss. So I will take it up promptly to mitigate any what you might see as unnecessary discovery, if that should be the case. I know that there are also other motions in individual cases. I know Bravo has a Motion to Transfer Venue, Food.com, Meredith Corporation, of course Taco Mayo. The one in 337, there is a Motion to Transfer Venue. I think that's Time's, and then Tyson has one as well. So I will really work hard to have these taken up and ruled upon as soon as possible so you guys have an idea of what's going to happen.[17]

Since the Court's order setting the June 13 cases on an accelerated claim construction schedule, the Moving Defendants have provided discovery and met court deadlines despite the prejudice that has accrued having to litigate this case in an inconvenient forum and the strong likelihood that their cases will eventually be transferred. To make matters worse, the parties are about to commence more detailed merits discovery and claim construction. On January 15, 2013, the Moving Defendants must provide consolidated proposed claim constructions with all other defendants (to be submitted by the Lead Defendant on behalf of everyone).[18] In this process, the Moving Defendants must negotiate and compromise with several dozen defendants, each potentially having its own separate views of the claim terms it views as important and the constructions it believes are correct. Additional claim construction deadlines arise in February, followed by claim construction briefing in March and April, and finally a live tutorial and hearing on May 22 in Texarkana.[19]

With claim construction and merits discovery accelerating, Moving Defendants now seek the Court's assistance to stay the proceedings until a decision can be made on their pending transfer motions.

---

[17] *Id.*
[18] Case No. 2:12-cv-327, Dkt. No. 29, at 2-3, 7-8.
[19] *Id.* at 2-3.

### III.   <u>**LEGAL STANDARD**</u>

This court has the inherent authority to manage its docket by, for example, staying discovery and other proceedings in a case.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) (*citing Landis*, 299 U.S. at 254); Fed. R. Civ. P. 26(c) (stay permitted for "good cause"); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (a "trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined").  This Court's local rules further contemplate that case proceedings may be stayed upon Court order, noting that "***absent court order to the contrary***, a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue."  Local Rule CV-26(a) (emphasis added).  Indeed, this Court has in the past exercised this authority to stay proceedings until after a decision on preliminary motions.  *See GHJ Holdings, LLC v. Rhythm Tech, Inc.*, Case No. 5:11-CV-48-DF-CMC, Dkt. No. 18, at 3 (E.D. Tex. July 25, 2011) (Craven, M.J.) (staying patent false marking case until 21 days after resolution of motions to dismiss and transfer).

Recent authority confirms that when competing docket pressures prevent a district court from quickly resolving a transfer motion, the court should minimize prejudice by staying the proceedings until it can provide such a decision.  The Federal Circuit just a few weeks ago addressed this very issue.  In *Fusion-IO*, the plaintiff filed a lawsuit against Fusion-IO and eight other defendants.  Fusion-IO promptly moved to sever and transfer.  *In re Fusion-IO, Inc.*, Misc. No. 2012-139, slip op. at 1-2 (Fed. Cir. Dec. 21, 2012) (nonprecedential).  After briefing on the motions had been completed for some time, the district court granted Fusion-IO's motion to sever but denied the motion to transfer without prejudice, offering Fusion-IO an opportunity to

7

re-file the motion and start the process over if it believed transfer was still appropriate in light of the severance. *Id*. at 2. Fusion-IO sought a writ of mandamus from the Federal Circuit on the refusal to transfer. In its petition, Fusion-IO complained that the district court's order to start the motion process over again further delayed a decision on this preliminary gatekeeping issue and forced Fusion-IO to move forward with claim construction and discovery with the other eight defendants in an inconvenient forum. *See, e.g.*, Misc. No 2012-139, Dkt. No. 2, at 4-5. The Federal Circuit denied the petition for mandamus but only because the district court had not decided the transfer motion on the facts; the appellate court held that it would not weigh the transfer factors on its own without allowing the district court another opportunity to do so in the first instance. *Fusion-IO*, slip op. at 2.

The Federal Circuit, however, acknowledged Fusion-IO's concern with litigating on the merits in the Eastern District of Texas while the district court decided the transfer issue by recommending that Fusion-IO file a stay motion to limit that prejudice and also by noting its expectation that the district court would take up the stay motion and the transfer motion ***before*** proceeding to the merits of the case:

> ***We fully expect***, however, for Fusion-IO to promptly request transfer in the lead case along with a ***motion to stay proceedings*** pending disposition of the transfer motion, and ***for the district court to act on those motions before proceeding to any motion on the merits of the action***. *See In re Horseshoe Entm't*, 337 F.2d 429, 433 (5th Cir. 2003) ("As indicated earlier, Horseshoe filed its motion to transfer timely and before it filed its answer and in our view disposition of that motion should have taken a top priority in the handling of this case[.]"); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) ("[I]t is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary question of transfer.").

*Id*. (emphasis added). The Federal Circuit has therefore recommended a short stay of proceedings as the proper tool to balance a district court's need for time to address motions on its

busy docket and the prejudice to defendants that accrues during that time needed to render a decision.

### IV. THE COURT SHOULD FOLLOW THE FEDERAL CIRCUIT'S RECOMMENDATION BY STAYING PROCEEDINGS UNTIL AFTER A TRANSFER DECISION

In light of the heavy demand for this Court's resources and its competing docket priorities, Moving Defendants' transfer motions have not yet been resolved.  Moving Defendants sought a transfer at the very beginning of this case to ensure that they proceed only in a forum that is convenient for parties, witnesses, and documents and that they spend resources litigating the merits of the case only once in the appropriate forum.  Continuing to litigate the merits in this forum while awaiting a decision on their transfer motions would cause a waste of party resources for discovery and claim construction, would prejudice the rights of the Moving Defendants to seek claim construction and discovery under the specific rules and processes of the ultimate forum, and would thwart the purposes of 28 U.S.C. § 1404(a).  The relief requested here would supply the Court time to resolve the transfer motions consistent with its other priorities, and at the same time would limit the wasting of party resources preparing for specific discovery and claim construction in this case when a transfer may require defendants to start over on the merits.

### A.     The Prejudice to Moving Defendants Weighs Strongly in Favor of a Stay

The Moving Defendants face significant prejudice that is now poised to accelerate as the parties race toward a claim construction proceeding and move further into discovery on the merits.

First, the Moving Defendants have been consolidated with the several dozen other defendants for a claim construction process that has already begun and has significant deadlines throughout the next five months.  Should the Court grant the transfer motions after the Moving Defendants have gone through all or part of this process, resources will have been wasted.  This

Court's Patent Local Rules include claim construction procedures that are very specific to this and a handful of other districts, requiring the parties to exchange constructions on all disputed terms, create joint charts, and provide briefing on all disputed terms, providing reply brief to the patentee (but not the defendants), and conducting a live tutorial and Markman hearing.  Those specific procedures are not required in the districts where Moving Defendants have sought transfer.  Further, while this Court generally prefers to go through the entire claim construction process on all disputed terms before entertaining a summary judgment motion (and indeed requires a party to obtain permission before even being able to file a summary judgment motion), other courts (including the transferee districts), often entertain early targeted motions for summary judgment of non-infringement based on the absence of one claim element, which it construes as part of that early motion.

By this recitation, Moving Defendants are not denigrating this Court's specific procedures and practices with respect to claim construction; instead, they merely point out that each forum has its own quite different procedures and practices for this important substantive part of the litigation.  Without a stay, the Moving Defendants will be required to go through the claim construction process on all terms disputed by any party (including other defendants who may have different interests due to different accused products) using all of the specific procedures of this District.  If the Court grants the motions to transfer, whatever work has been done by that time will likely be rendered moot when the transferee Court takes up the case and sets a new schedule under its own different claim construction procedures.

Furthermore, Moving Defendants expect that if their cases is transferred, they might instead take advantage of whatever procedures might be permitted and encouraged in the transferee forum to resolve the case in a more efficient manner, such as a targeted summary

judgment motion on non-infringement and/or section 101 invalidity that would require construction within the summary judgment briefing of, at most, a few claim terms. Such a process would likely save considerable resources over the full Markman process (including briefing on numerous terms and a full-blown hearing) required by this District's local rules and this Court's scheduling order for these cases. As recited in Section II above, the Moving Defendants previously sought to avoid this prejudice by proposing a later claim construction schedule to provide the Court more time to resolve the transfer issues before the parties began these forum-specific claim construction procedures, but the Court denied that request.

Second, this Court's scheduling order also required the defendants to appoint one of the several dozen defendants as a "Lead Defendant" for briefing and arguing claim construction for everyone. While this procedure might have some advantages for the Court facing construction involving dozens of parties thrown together by Plaintiff, it has a number of significant disadvantages for the Moving Defendants. For example, each defendant loses the ability to have its own chosen counsel brief and argue the positions specific to it. Further, the procedure requires that the other defendants reimburse counsel for the appointed "Lead Defendant" for a share of its work briefing and arguing claim construction in this district. That expense will be wasted if a case is transferred during the process to a district that will permit defendants to argue their own proposed claim constructions on their own limited number of terms through counsel of their choice.

Third, in addition to consolidating all defendants for claim construction purposes, the Court also consolidated the several dozen defendants for discovery. This consolidation limits the amount of discovery available to each Moving Defendant compared to what would be available in the proposed transferee districts. For example, due to the consolidation of this enormous

11

number of defendants, each defendant is limited to just two hours of its own deposition time with the named inventor and must share with all of the other defendants another five hours.  Case No. 2:12-cv-327, Dkt. No. 29, at 11.  In another district that does not have this large number of defendants lumped together, each defendant would presumably obtain at least seven hours of its own to take such a deposition.  *See* Fed. R. Civ. P. 30.  Likewise, instead of having the ability to serve its own twenty-five interrogatories, *see* Fed. R. Civ. P. 33, each consolidated defendant in these cases may only serve ten of its own interrogatories and must negotiate with all the other defendants for a pool of twenty "common" interrogatories to be shared by all.  Case No. 2:12-cv-327, Dkt. No. 29, at 10.  These discovery limitations will soon negatively impact the Moving Defendants because the case is moving forward into the discovery phase without a decision on the motions to transfer.

While the Moving Defendants understand this Court's reasons for consolidating these cases for discovery and claim construction, such consolidation should not occur until transfer motions are decided and the proper set of defendants for each forum are set.  The Federal Circuit's *In re EMC Corp.* mandamus decision, 677 F.3d 1351 (Fed. Cir. 2012), made this clear. There, the district court misconstrued the requirements for joinder of patent defendants under Fed. R. Civ. P. 20, so the Federal Circuit vacated the denial of the defendant's severance motion and ordered the district court to reassess joinder under the proper test.  *Id*. at 1360.  The Federal Circuit also noted that even if joinder was found to be improper, the district court had discretion under Rule 42 to consolidate separate cases for pretrial processes and/or trial but only "***where venue is proper*** and there is only a 'common question of law or fact.'"  *Id*. (*quoting* Fed. R. Civ. P. 42(a)) (emphasis added).  Thus, consolidation of a number of separately sued defendants into one pre-trial coordinated proceeding, such as was done for this case, presumes that the district

court has already evaluated the merits of any motions to transfer and has concluded that venue is appropriate under § 1404(a) for each case is that judicial district.  Until the transfer motions in these cases are decided, the Moving Defendants should not be consolidated with the other defendants in this district.

Fourth, allowing this case to proceed with full discovery and substantive proceedings while awaiting a decision on a transfer motion would undermine the purpose of 28 U.S.C. § 1404(a), which is to avoid forcing parties to litigate in an inconvenient forum.  The Federal Circuit's recent decision in *Fusion-IO* recognized this concern (which was raised by Fusion-IO in its petition) and resolved it by recommending that a stay be sought and that the district court take up the stay and transfer issues ***before*** other matters in the litigation.  Likewise, the Federal Circuit quoted approvingly from several decisions highlighting the importance of deciding transfer motions prior to addressing other matters in the case.  *See In re Horseshoe Entm't*, 337 F.2d 429, 433 (5th Cir. 2003) (noting that disposition of a transfer motion should be a "a top priority in the handling of this case"); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) (criticizing postponement of a decision on transfer until after discovery).

Given the prejudice described above if the Moving Defendants' cases continue on their consolidated schedule before a decision on the transfer motions, good cause exists for the Court to exercise its inherent authority to stay the proceedings until such time as it is able to provide such a decision.  Such a stay would also follow what the Federal Circuit has said it would "expect" to occur before proceedings on the merits move forward.  *See Fusion-IO*, slip op. at 2.

### B. The Burden on Plaintiff From a Short Stay Would Be Slight

While a short stay of proceedings will limit the accelerating prejudice to Moving Defendants discussed above, a stay will not unduly prejudice Plaintiff DietGoal.

First, the requested stay will only impact the handful of cases in which a defendant sought transfer to a more convenient forum.  DietGoal will be free to continue on the current schedule with all of the other defendants, permitting it to engage in its patent enforcement business against most of its targets.

Second, DietGoal is not in a position to complain about a short stay in these lawsuits given the many years that DietGoal and its predecessor-in-interest delayed in filing these lawsuits against the Moving Defendants.  Many of the accused websites have been in operation for years.  For example, the Internet Archive shows that Meredith's accused Eating Well Menu Planner feature was available on the Eating Well website at least as early as March 13, 2009, over three years before DietGoal filed suit.  (Ex. 2.)  The Archive likewise shows the accused Bravo recipe search feature available at least as early as June 29, 2009 (Ex. 3.) and Time's accused Real Simple recipe search feature available at least as early as February 10, 2010 (Ex. 4.)  As of those dates, the asserted patent was in existence, so DietGoal and/or its predecessor-in-interest could have filed suit at any time thereafter.  Furthermore, DietGoal delayed further when it tried to add the June 13 defendants almost six months after filing its initial lawsuit.  Because the patent owners themselves delayed in bringing these lawsuits to enforce their alleged rights, they cannot complain about a short additional stay to ensure that these cases proceed on the merits in the proper forum.  *See, e.g., Ingro v. Tyco Indus., Inc.*, 1985 WL 1649, at *3 (N.D. Ill. 1985) (finding delay during a stay would not be not undue "especially in light of plaintiff's own delay in initiating litigation").

Third, DietGoal cannot legitimately claim that a stay would cause it any irreparable harm.  As discussed in the transfer motions, DietGoal has no business other than litigation and therefore does not compete with any of the parties that it sued.  If DietGoal can ultimately establish

14

liability and a basis for damages, any delay caused by a stay will not impact its ability to collect damages.  The lack of any concern of irreparable harm is confirmed by DietGoal's failure to move for a preliminary injunction against any defendant.  Thus, any delay due to a short stay would not prejudice DietGoal's damages position.  *Cf. In re Morgan Stanley*, 417 Fed. App'x 947, 950 (Fed. Cir. Apr. 6, 2011) (ordering transfer to SDNY and finding that any delay caused by a slower docket was not relevant given that the plaintiff was not a competitor and that money damages would be available).

## V.  <u>CONCLUSION</u>

Continuing with merits discovery and substantive proceedings, such as claim construction, in this forum while a motion to transfer is pending prejudices the Moving Defendants by forcing them to follow procedures and limitations that would not likely apply in the proposed transferee district and by risking the waste of their resources on proceedings in this district.  This Court has assured the parties that it will reach the transfer motions as quickly as it can given its heavy docket and competing motion priorities, which the Moving Defendants appreciate.  However, the only reasonable solution for limiting this prejudice until such time as the Court is able to render a decision on transfer is to follow the Federal Circuit's expectation that a stay will be entered in the interim.  Accordingly, the Moving Defendants respectfully request that the Court enter such a stay of proceedings in the cases against them.

Respectfully submitted,

Dated:  January 8, 2012          By:      */s/ J. Christopher Carraway*
                                           J. Christopher Carraway (OR Bar No. 961723)
                                           christopher.carraway@klarquist.com
                                           KLARQUIST SPARKMAN, LLP
                                           121 S.W. Salmon Street, Suite 1600
                                           Portland, Oregon  97204
                                           Telephone:  (503) 595-5300
                                           Facsimile:  (503) 595-5301

*Attorneys for Defendants Bravo Media LLC, Meredith Corp., and Time Inc.*

By:   /s/ Michael A. Betts
      Michael C. Felty - OBA #10804
      Michael A. Betts - OBA #21600
      LYTLE, SOULÉ & CURLEE, P.C.
      119 North Robinson Avenue, Suite 1200
      Oklahoma City, OK 73102
      Telephone: 405-235-7471
      Facsimile: 405-232-3852
      E-mail: felty@lytlesoule.com
              betts@lytlesoule.com

      Keith J. Hocker - OBA #11102
      G.C. Taco Mayo Franchise Systems, Inc.
      10405 Greenbriar Place
      Oklahoma City, OK 73159
      Telephone: 405-323-5236
      Facsimile: 405-691-2572
      E-mail: keithh@tacomayo.com

      *Attorneys for Defendant Taco Mayo Franchise Systems, Inc.*

By:   /s/ Ravi Sitwala
      Jonathan R. Donnellan
      Texas Bar No. 24063660
      Ravi V. Sitwala
      New York Bar No. 4359899
      Courtenay B. O'Connor
      New York Bar No. 4424586
      THE HEARST CORPORATION
      300 West 57th Street
      New York, NY 10019
      Phone: 212-649-2020
      Facsimile: 212-649-2035
      jdonnellan@hearst.com
      rsitwala@hearst.com
      coconnor@hearst.com

      *Attorneys for Defendant Hearst Communications, Inc.*

16

By:      */s/ Eugene Feher*
         Eugene A. Feher (BBO No. 550762)
         gfeher@hbcllc.com
         HAYES BOSTOCK &CRONIN LLC
         300 Brickstone Square, 9th Floor
         Andover, MA 01810
         Telephone: (978) 809-3850
         Fax: (978) 809-3869

         Michael Charles Smith
         Texas State Bar No. 18650410
         Email: michaelsmith@siebman.com
         SIEBMAN BURG
         PHILLIPS & SMITH LLP
         113 East Austin St.
         P.O. Box 1556
         Marshall, TX 75671
         Telephone: (903) 938-8900
         Fax: (972) 767-4620

         *Attorneys for Defendant Dunkin' Brands Group, Inc.*

By:      */s/Douglas L. Sawyer*
         Douglas L. Sawyer
         (Colorado Bar No. 41009)
         dsawyer@perkinscoie.com
         Amanda Tessar
         (Colorado Bar No. 33173)
         atessar@perkinscoie.com
         PERKINS COIE LLP
         1900 Sixteenth Street, Suite 1400
         Denver, CO  80202
         Telephone:  (303) 291-2300
         Facsimile:  (303) 291-2400

         *Attorneys for Defendant QIP Holder LLC (d/b/a Quiznos)*

By:     */s/ M. Kelly Tillery*        
            M. Kelly Tillery (admitted *Pro Hac Vice*)
            PEPPER HAMILTON LLP
            3000 Two Logan Square
            18th and Arch Street
            Philadelphia, PA 19103
            Tel:  215.981.4000
            Fax:  215.981.4750
            Email: tilleryk@pepperlaw.com

            Michael Ernest Richardson
            BECK REDDEN & SECREST - Houston
            1221 McKinney
            Suite 4500
            Houston, TX 77010-2010
            Tel:  713.951.6284
            Fax: 713.951.3720
            Email: mrichardson@brsfirm.com

            *Attorneys for Defendant  El Pollo Loco Inc.*

By:     */s/ Thomas Cunningham*       
            Frank A. Angileri
            (MI Bar No. P45611)
            Thomas W. Cunningham
            (MI Bar No. P57899)
            BROOKS KUSHMAN P.C.
            1000 Town Center, Twenty-Second Floor
            Southfield, Michigan 48075
            Telephone: (248) 358-4400
            Facsimile: (248) 358-3351
            fangileri@brookskushman.com
            tcunningham@brookskushman.com

            *Attorneys for Defendant  Domino's Pizza, Inc.*

By:     */s/ James S. Blackburn*       
            James S. Blackburn
            California State Bar No. 169134
            James.Blackburn@aporter.com
            Amie L. Medley
            California State Bar No. 266586
            Amie.Medley@aporter.com
            ARNOLD & PORTER LLP
            777 South Figueroa Street
            Forty-Fourth Floor

18

Los Angeles, California 90017-5844
Telephone:  (213) 243-4000
Fax:  (213) 243-4199

Douglas McSwane
Texas State Bar No. 13861300
dougmcswane@potterminton.com
Ashley Pate
Texas State Bar No. 24066505
ashleypate@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
Telephone:  (903) 597-8311
Fax:  (903) 593-0846

*Attorneys for Defendants IAC/Interactive Corp.,
Daily Burn, Inc., Television Food Network G.P.
d/b/a Food Network, and Scripps Networks,
LLC d/b/a Food.com*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 8, 2013, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ J. Christopher Carraway*
J. Christopher Carraway

<u>CERTIFICATE OF CONFERENCE</u>

On January 8, 2013, on behalf of all Moving Defendants, I conferred by phone with Niky Bukovcan, counsel for Plaintiff, and Plaintiff is opposed to this motion to stay.

*/s/ J. Christopher Carraway*
J. Christopher Carraway